IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 23-cv-02243-PAB-STV

MICHELE A. OVER, and
THE ESTATE OF PAUL R. OVER,

Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and
STATE FARM FIRE AND CASUALTY COMPANY,

Defendants.

---

**ORDER**

---

This matter comes before the Court on Defendant State Farm Automobile Insurance Company's Motion to Exclude or Limit Opinions of Plaintiff's Expert Aaron Castillo [Docket No. 61]. Plaintiffs Michele A. Over and the Estate of Paul R. Over (the "Estate") filed a response. Docket No. 67. Defendant filed a reply. Docket No. 70. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND

On August 3, 2023, Michele A. Over and Paul R. Over filed this case in state court. Docket No. 1 at 1-2, ¶ 1. On September 1, 2023, defendants removed the case. *See id.* On April 30, 2025, plaintiffs filed a notice informing the Court that Mr. Over had passed away. Docket No. 48. On January 22, 2026, the magistrate judge granted plaintiffs leave to file an amended complaint. *See* Docket No. 68. On January 26, 2026, plaintiffs filed an amended complaint with the Estate substituted as a plaintiff for Mr. Over. Docket No. 69. In the amended complaint, plaintiffs assert claims for breach

of contract arising out of plaintiffs' claim for hail damage against State Farm Fire and Casualty Company ("State Farm Fire") (Count I); unreasonable denial of plaintiffs' claim for hail damage against State Farm Fire (Count II); bad faith breach of insurance contract arising out of plaintiffs' claim for hail damage against State Farm Fire (Count III); unreasonable delay and denial of Mr. Over's auto theft claim against State Farm Mutual Automobile Insurance ("State Farm Auto" or "SFMAIC") (Count IV); and bad faith breach of insurance contracting arising out of Mr. Over's auto theft claim against State Farm Auto (Count V). *Id.* at 5-9.

On December 23, 2025, defendants State Farm Fire and State Fire Auto filed a partial motion for summary judgment on all of plaintiffs' claims except for Count I. *See* Docket No. 59. That same day, State Farm Auto filed a motion to strike the opinions of plaintiffs' insurance industry standards expert, Aaron Castillo. Docket No. 61.

## II. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590–91 (1993). If challenged by a party opposing the testimony of an expert witness, "[Rule] 702 imposes upon the trial judge an important 'gate-keeping' function with regard to the admissibility of expert opinions." *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1307 (10th Cir. 2015) (citation omitted). However, "[t]he proponent of expert testimony

bears the burden of showing that its proffered expert's testimony is admissible." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). "[T]he proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." *Id.* (quoting Fed. R. Evid. 702 advisory committee's note (2000)).

To determine whether an expert opinion is admissible, the court must perform "a two-step analysis." *Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2022); *see also 103 Investors I, L.P. v. Square D Co*., 470 F.3d 985, 990 (10th Cir. 2006). First, the court must determine whether the expert is qualified by "knowledge, skill, experience, training, or education" to render an opinion. *Roe*, 42 F.4th at 1180 (quoting Fed. R. Evid. 702).

Second, if the expert is sufficiently qualified, the proffered opinions must be assessed for reliability. *Id.* at 1180–81. To demonstrate the reliability of an opinion that is based solely on an expert's experience, the expert "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702, advisory committee notes). Establishing reliability does not require showing that the expert's testimony is indisputably correct. *United States v. Pehrson*, 65 F.4th 526, 540 (10th Cir. 2023); *see also Goebel v. Denver & Rio Grande W. R.R. Co.,* 346 F.3d 987, 991 (10th Cir. 2003) (discussing how the opinion is tested against the standard of reliability, not correctness). However, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing

data only by the *ipse dixit* of the expert." *Roe*, 42 F.4th at 1181. "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

## III. ANALYSIS

In some cases, such as insurance bad faith cases, expert witnesses are permitted to testify about relevant legal standards. "[A]n expert's testimony is not *per se* inadmissible simply because it requires discussion of the law." *Amica Life Ins. Co. v. Wetz*, No. 15-cv-01161-WJM-CBS, 2017 WL 897839, at *3 (D. Colo. Mar. 7, 2020). "[A] witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988). Such testimony "is proper under Rule 702 if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function. However, when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed." *Id.* at 809-10. Testimony that "articulates the ultimate principles of law governing the deliberations of the jury" is inadmissible. *Id.* at 808. While an expert may refer to the law in expressing his or her opinion, the expert "may not state legal conclusions drawn by applying the law to the facts." *A.E. ex rel. Evans v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991) (citations omitted).

An expert may testify as to insurance industry standards codified in Colorado statute and ones that are "generally accepted" within the Colorado insurance industry.

*Dale v. Country Preferred Ins. Co.,* No. 19-cv-01991-PAB-SKC, 2021 WL 1172574, at *2 (D. Colo. Mar. 29, 2021). Industry standards are those that are "customary" and provide an "objective basis" for establishing "standards of conduct in the insurance industry." *Brewer v. Am. & Foreign Ins. Co.*, 837 P.2d 236, 238 (Colo. App. 1992); *see also Turner v. State Farm Mut. Auto. Ins. Co.*, No. 13-cv-01843-MSK-NYW, 2015 WL 3526995, at *4 (D. Colo. June 4, 2015) ("'Industry standards' are those practices or procedures that, although not compelled by law, are generally and voluntarily observed by all or most participants in a certain industry for reasons such as efficiency, convenience, or uniformity.").

If an expert testifies to an industry standard that is not codified, the expert must show that the industry standard is "generally accepted." *Dale,* 2021 WL 1172574, at *2. Where an expert provides no "source, context or other information about how [industry standards] were formulated or why they are considered industry standards," an expert may not rely on such industry standards. *Turner v. State Farm Mut. Auto. Ins. Co.*, No. 13-cv-01843-MSK-BNB, 2015 WL 1297844, at *6 (D. Colo. Mar. 19, 2015).

An expert is not permitted to "state legal conclusions drawn by applying the law to the facts," *A.E. ex rel. Evans*, 936 F.2d at 476, because "such ultimate conclusions would not be helpful to the jury and would improperly intrude on its fact-finding function." *O'Sullivan*, 233 F. Supp. 3d 917, 929 (D. Colo. 2017) (excluding opinions that an insurance company's conduct violated the law). Therefore, an expert may not opine on whether a party met its duties under applicable caselaw or violated various statutes. An expert may, however, testify whether, in his or her opinion, a party's conduct conformed with specific insurance industry standards, including ones identified in statutes, and may

compare those standards to specific factual instances involving defendant's actions. *See Dale*, 2021 WL 1172574, at *3; *see also O'Sullivan*, 233 F. Supp. 3d at 928 (ruling that expert could offer opinions whether defendant's conduct "differed, in factual terms" from industry standards, but could not opine about whether defendant's conduct "was unlawful or 'egregious'"); *Houston Speciality Ins. Co. v. Vaughn*, 2017 WL 11415011, at *3 (M.D. Fla. Apr. 13, 2017) (permitting an insurance expert to (1) "explain[] what she knows of insurance industry standards, (2) "explain[] the facts and evidence she reviewed in the case," and (3) "opin[e] on the ways she believes [the insurer's] conduct fell short of" those standards). Moreover, an expert may not offer a cumulative summary of a party's actions to opine that a party's conduct either failed to meet all of the relevant industry standards, and therefore its conduct was unreasonable according to those standards, or was unreasonable as a matter of law. *See O'Sullivan*, 233 F. Supp. 3d at 929. The expert's opinions must be "sufficiently grounded by reference to specific factual observations" and then linked to "industry standards." *Conrad v. Owners Ins. Co.,* No. 20-cv-02173-KMT, 2021 WL 5280188, at *3 (D. Colo. Nov. 12, 2021).

### A. <u>Mr. Castillo's Qualifications</u>

State Farm Auto argues that Mr. Castillo is not qualified to testify as an insurance industry standards expert. *See* Docket No. 61 at 4-6. State Farm Auto argues that he does "not demonstrate such familiarity with the standards and practices within the insurance industry." *Id.* at 5. State Farm Auto cites Mr. Castillo's deposition testimony, arguing that it shows Mr. Castillo's lack of understanding of the insurance industry. *Id.*

The Court finds that Mr. Castillo is qualified to opine on insurance industry standards by way of his knowledge, skill, experience, and training. Mr. Castillo has 20 years of experience with a major insurance carrier, eight of which he served as an auto damage adjustor and 12 of which he served as an auto damage supervisor. Docket No. 61-2 at 1. State Farm Auto fails to explain why Mr. Castillo's purported misunderstanding regarding Colorado's Division of Insurance and certain terms are material to his ability to testify regarding insurance industry standards.

**B. Reference to Industry Standards Set Forth in Statutes**

State Farm Auto argues that Mr. Castillo fails to reference industry standards and does not cite insurance regulations or case law. Docket No. 61 at 5. An expert on insurance industry standards "may testify whether, in his opinion, defendant's conduct conformed with specific insurance industry standards," including those that are codified under the Unfair Claim Settlement Practices Act (the "UCSPA"), Colo. Rev. Stat. § 10-3-1104; *see also George v. Metro. Prop. & Cas. Ins. Co.*, No. 18-cv-01663-PAB-SKC, 2020 WL 70424, at *9 (D. Colo. Jan. 2, 2020). Here, Mr. Castillo's report cites Colo. Rev. Stat. § 10-3-1104(1)(h)(III). *See* Docket No. 61-2 at 6. Pursuant to this provision of the UCSPA, it is an unfair claim settlement practice to "[f]ail[] to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies." Colo. Rev. Stat. § 10-3-1104(1)(h)(III). Mr. Castillo opines that State Farm Auto violated this insurance industry standard by creating confusion as to which claims adjustor was responsible for the auto claim. *See* Docket No. 61-2 at 6. Furthermore, Mr. Castillo relies on § 10-3-1104(1)(h)(VI), *see id.*, which states it is an unfair practice to not "attempt[] in good faith to effectuate prompt, fair, and equitable settlements of

claims in which liability has become reasonably clear." Colo. Rev. Stat. § 10-3-1104(1)(h)(VI). Mr. Castillo opines that State Farm violated this standard by failing to rely on the photographs in the claim file and failing to follow-up on issues arising out of auto parts that were discontinued. Docket No. 61-2 at 6. Thus, the Court disagrees with State Farm Auto that Mr. Castillo only describes insurance industry standards in his rebuttal report. *See* Docket No. 61 at 5. Moreover, the Court finds that it was proper for Mr. Castillo to respond to State Farm Auto's expert in his rebuttal report by providing insurance industry standards.

State Farm also challenges the following opinions as improper legal conclusions:

> [SFMAIC] has a duty to pay all reasonable costs sufficient to pay for the beneficiary's or claimant's repairs including material or parts[.] C.R.S. 10-4-120(3)(e)
>
> [SFMAIC] failed to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies[.] C.R.S 10-3-1104 (1)(h)(III)
>
> State Farm [Auto] did not attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear[.] C.R.C. [sic] 10-3-1104 (1)(h)(VI)

*Id.* at 6. As discussed above, Mr. Castillo can rely on insurance standard statutes when identifying industry standards. Furthermore, it is proper for Mr. Castillo to opine as to whether State Farm Auto's conduct conformed to these standards. *See Dale*, 2021 WL 1172574, at *3 ("An insurance industry expert is permitted to testify regarding insurance industry standards and, additionally, that a defendant's conduct did not conform with those standards"). Mr. Castillo "may discuss these industry standards and compare those standards to specific, factual instances of defendant's actions and compare those specific instances to industry standards he identifies." *See id.* Mr. Castillo does so by

discussing State Farm's conduct as it relates to its denial of the tonneau cover, a lack of clarity regarding the claims adjustor who was responsible for handling Mr. Over's claims, and failing to rely on photographs provided by Mr. Over.[1] *See* Docket No. 61-2 at 6; *see also Olsen v. Owners Ins. Co.*, No. 18-cv-01665-RM-NYW, 2022 WL 1663121, at *6 (D. Colo. May 25, 2022) (finding that an insurance standards expert could "explain how claims are generally handled in the insurance industry, including by discussing the standards for timely investigations, reservations of rights, and coverage decisions, and can explain the facts that he believes demonstrate that [the insurer] departed from those standards or fell short of them"). Thus, the Court rejects State Farm Auto's argument that the identified opinions constitute impermissible legal conclusions.

### C. The Reliability of Mr. Castillo's Opinions

State Farm Auto argues that Mr. Castillo's opinions are not reliable under Fed. R. Civ. P. 702. *See* Docket No. 61 at 7-12. The Court considers each identified opinion in turn.

#### *1. Opinions Regarding State Farm Auto's Estimate Handling and Supplement Process*

State Farm Auto argues that Mr. Castillo's opinion that State Farm Auto "locked" several "unreasonable repair estimate[s]" is unreliable. *See id.* at 8; Docket No. 61-2 at 2-3. State Farm Auto argues that, through these opinions, Mr. Castillo is "essentially attempting to attribute some kind of nefarious intent behind a regular claims process." Docket No. 61 at 8. State Farm contends that these opinions are "based on Mr. Castillo's personal belief – rather than personal knowledge" regarding what State Farm

[1] Whether these specific opinions are admissible under Fed. R. Evid. 702 is discussed below.

Auto was "thinking or intending." *See id*. State Farm Auto contends that "[t]here was nothing 'locked' about the estimates" State Farm Auto provided to Mr. Over as it "continued to evaluate the claims based on additional information and provided additional estimates." *See id.* Mr. Castillo's opinions do not suggest otherwise; rather, he acknowledges that State Farm Auto provided several estimates throughout the claims handling process based on additional information. *See* Docket No. 61-2 at 2-3. Although it is not entirely clear what Mr. Castillo means when he says that State Farm Auto "locked" its estimates, *see id,* these opinions do not attribute bad intent to State Farm Auto. The Court finds that nothing about these opinions of Mr. Castillo justify exclusion Fed. R. Civ. P. 702.

***2. Opinions Regarding State Farm Auto's Processes with Weld County Garage***

State Farm Auto challenges Mr. Castillo's opinions that:

> [A] significant delay was caused because State Farm demanded that Weld County Garage handle the claim according to their processes, which falls below industry standard. This caused an unnecessary delay in the claims processing since State Farm refused to address the supplement without the use of the B2B portal.

Docket No. 61 at 8; Docket No. 61-6 at 2. State Farm Auto argues that Weld County Garage was an independent contractor and State Farm Auto had no obligation to guarantee its work. *See* Docket No. 61 at 9. Thus, State Farm Auto argues that "any conduct of Weld County Garage that resulted in alleged delay that Mr. Castillo opines constitutes bad faith on SFMAIC are in no way attributable to SFMAIC under Colorado law." *Id.*

The Court finds that Mr. Castillo's opinion is not in contravention of Colorado agency law and he is not attributing the conduct of Weld County Garage to State Farm

Auto. Rather, Mr. Castillo opines that a place like Weld County Garage, which is not a body shop, does not have access to the database that State Farm uses for its estimates. *See* Docket No. 61-6 at 2. Mr. Castillo opines that "many mechanic/service shops do not even use an estimating system when handling their repair costs or estimates." *Id.* In light of this, Mr. Castillo opines that State Farm Auto violated industry standards by not adapting its procedures to accommodate the limitations of Weld County Garage thereby causing the delay in processing Mr. Over's claim. *See id.* at 1-2. The Court finds that this opinion is proper.

***3. Opinions Regarding Performance of a Physical Inspection***

State Farm Auto challenges Mr. Castillo's opinion that, "[i]f phone calls and emails [with Weld County Garage] are not resolving the claim, the proper procedure should be to set up a field inspection to resolve the claim." *See* Docket No. 61 at 9-10; Docket No. 61-6 at 4. State Farm Auto argues that Mr. Castillo's "opinions regarding a physical inspection are entirely speculative." Docket No. at 61 at 10. State Farm Auto also argues that Mr. Castillo's opinion "ignores the fact that SFMAIC did offer and did complete a physical inspection." *Id.*

Plaintiffs respond that Mr. Castillo properly opines that recovered theft claims "typically require a physical inspection of the vehicle and also as a best practice have the vehicle owner at the inspection to confirm the damage related to the loss as well as unrelated prior damage." Docket No. 67 at 11 (citation omitted); Docket No. 61-6 at 3. Plaintiffs also note Mr. Castillo opines that a physical inspection would have permitted State Farm Auto to adequately confer regarding repairs and would have reduced delays. *See* Docket No. 67 at 11-12.

The Court finds that Mr. Castillo fails to properly tie his opinion that State Farm Auto should have performed a physical inspection to an industry standard. Rather, Mr. Castillo merely states it is "best practice" for a physical inspection to be performed. *See* Docket No. 61-6 at 3. This is not an industry standard. *See Williams v. Auto-Owners Ins. Co.*, No. 12-cv-00999-MSK-CBS, 2014 WL 12537030, at *5 (D. Colo. Mar. 25, 2014), *aff'd sub nom. Williams v. Owners Ins. Co.*, 621 F. App'x 914 (10th Cir. 2015) (unpublished) ("if [plaintiff's expert] is merely stating an aspirational standard that is not actually in use in the insurance industry, or is merely offering a personal view as to what he would have liked to have seen [plaintiff's insurer] do, such opinions are insufficient") (applying Colorado law); *S. Minn. Beet Sugar Coop. v. Agri Sys.*, 2020 WL 5105763, at *5 (D. Minn. Aug. 31, 2020) ("industry best practices are aspirational and generally prescribe a higher standard of care than the industry standard of care") (applying Minnesota law). Furthermore, Mr. Castillo provides no industry standard that demonstrates that State Farm Auto's eventual performance of the physical inspection was untimely. Instead, plaintiffs rely on Mr. Castillo's deposition, where he opined that the physical inspection was untimely. *See* Docket No. 67 at 12. Not only is this opinion not in his expert report, *see Perez v. Sunbeam Prods., Inc.*, No. 21-cv-01915-PAB-KAS, 2024 WL 2979450, at *4 n.3. (D. Colo. June 13, 2024) ("A party may not supplement a retained expert's report through deposition testimony."), but Mr. Castillo fails to tie that opinion to an industry standard.

While Mr. Castillo can discuss delays in State Farm Auto's claim handling, Mr. Castillo cannot opine that State Farm Auto needed to perform a physical inspection. Accordingly, the Court will exclude this opinion.

### *4. Opinions Regarding the Tonneau Cover*

State Farm Auto challenges Mr. Castillo's opinions involving that part of Mr. Over's claim regarding the tonneau cover. Docket No. 61 at 10-11. Mr. Castillo opines that, after Mr. Over informed State Farm Auto that he did not have receipts for the tonneau cover, State Farm "delayed the processing of this damage without supporting documentation." Docket No. 61-2 at 2-3. He opines that "[a] simple review of the photos from the vandalism claim that was submitted on August 22, 2022 would clearly show photos of the tonneau cover on the vehicle and should have never delayed payment or even questioned if claim related." *Id.* at 3. State Farm Auto argues that there is "no evidence that this request" for the receipt "caused any actual delay as Mr. Castillo so opines." Docket No. 61 at 11. State Farm Auto argues that Mr. Castilo's opinions are "entirely contrary to the facts" and "entirely conclusory." *Id.*

The Court finds that Mr. Castillo's opinions are not contrary to the facts or conclusory under Fed. R. Evid. 702. State Farm Auto fails to identify the facts that Mr. Castillo misapprehended. The issue in dispute is whether State Farm Auto knew, or could have determined, from Mr. Over's initial claim that the truck bed had a tonneau cover. While State Farm contends that it did not know from the initial claim whether the tonneau cover should be considered in the claim, Mr. Castillo opines that, based on the photos in the initial claim material, State Farm Auto knew or should have known to include the tonneau cover. While the jury will need to resolve this factual dispute, Mr. Castillo's opinion satisfies Fed. R. Evid. 702 so long as the jury accepts his conclusion that State Farm Auto knew or should have known from the initial claim that the truck had a tonneau cover. Accordingly, the Court will not strike Mr. Castillo's opinions.

### 5. *Opinions Regarding Claims Assignment*

State Farm Auto challenges the following opinions:

> A review of the file shows that State Farm mishandled the assignment of the claim which caused further delays. A thorough review shows that on numerous occasions the Tier 1 adjuster attempted to reassign the claim to the Tier 2 adjuster despite the Tier 2 adjuster advising there is no coverage issue and the claim should be handled by Tier 1. This only added to the delays in the claims processing.

Docket No. 61 at 11; Docket No. 61-2 at 5. State Farm Auto argues that Mr. Castillo's opinions concern State Farm Auto's state of mind. *See* Docket No. 61 at 11. State Farm Auto also contends that the opinions "are merely speculative and therefore fail the reliability prong of Fed. R. Evid. 702 and the personal knowledge requirement of Fed. R. Evid. 703." *Id*. Plaintiffs respond that "Mr. Castillo's opinions state a factual assertion – SFMAIC's mismanagement over who was responsible for handling the claims added to the delays in the handling of the claim" and that Mr. Castillo "applied his expansive experience and knowledge of the insurance industry to Defendant's own file notes." Docket No. 67 at 13.

The Court finds that Mr. Castillo fails to provide an industry standard to support his opinions and that they are speculative. Although he purports to base his opinion on § 10-3-1104(1)(h)(III) – which states an insurer shall not "[f]ail[] to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies" – Mr. Castillo does not explain how the alleged misassignment of Mr. Over's claim contributed to any delay. Moreover, Mr. Castillo opines that the Tier 1 adjuster "attempted" to reassign the claim and does not explain how these mere attempts to reassign resulted in delay. *See* Docket No. 61-2 at 5. Because Mr. Castillo's opinions are speculative and not based on an identifiable industry standard, the Court will

exclude his opinions regarding the attempted reassignment of claims between the Tier 1 and Tier 2 adjuster.

### *6. Opinions Regarding Discontinued Parts*

State Farm Auto challenges Mr. Castillo's opinions regarding State Farm Auto's process for procuring discontinued auto parts needed to repair Mr. Over's vehicle. *See* Docket No. 61 at 11-12. State Farm Auto argues that Mr. Castillo's opinion that State Farm Auto only authorized Weld County Garage to use LKQ Corp. as its vendor for the discontinued parts is "a conclusory opinion that is not supported by any record evidence." *Id.* at 12. State Farm Auto contends that it "simply showed Weld County Garage where it *could* buy parts." *Id.* State Farm Auto challenges Mr. Castillo's opinion that State Farm Auto's failure to authorize open-parts sourcing resulted in "excessive delay." *Id.* State Farm Auto also challenges Mr. Castillo's opinion that "[o]nce the payments were approved there was no follow up on the discontinued parts that caused an 8 month delay." Docket No. 61 at 12; Docket No. 61-2 at 6. State Farm Auto contends that Mr. Castillo "fails entirely to recognize that SFMAIC's handling of the claim was complete once the final payment was made in December 2022." Docket No. 61 at 12.

Plaintiffs contend that Mr. Castillo opines State Farm Auto only identified LKQ Corp. as the vendor for which it would cover replacement parts. Docket No. 67 at 13. Because Weld County Garage did not want to charge Mr. Over for "parts SFMAIC would not cover," Mr. Castillo opines that Weld County Garage was "effectively bound to this vendor per the supplement to repair alternate parts supplier list." *Id.* (internal quotation and citation omitted). Plaintiffs argue that this "factual disagreement" between

the parties as to whether State Farm Auto was showing Weld County Garage where it "*could* buy parts, not where it *had* to buy parts" is "best fit to be resolved by a vigorous cross-examination at trial." *See id.* at 14. Plaintiffs also argue the "primary issue with binding Weld County Garage to LKQ is that LKQ never had the necessary parts available to repair the truck." *Id.* at 13.

The Court finds that Mr. Castillo's opinion is improper because it is not tied to an industry standard. Mr. Castillo contends that State Farm Auto's failure to authorize open-parts sourcing and to contact LKQ to confirm that the necessary parts were unavailable "demonstrates a violation in their regular business practice." Docket No. 61-6 at 5. However, a jury cannot base a verdict on plaintiffs' bad faith claims on State Farm Auto's violation of its own internal standards as opposed to industry standards. *See Lynn v. State Farm Mut. Auto. Ins. Co.*, 815 F. Supp. 3d 1209, 1216 (D. Colo. 2025). To the extent that Mr. Castillo bases his opinions on a delay that is precluded by § 10-3-1104(1)(h)(III), Mr. Castillo must tie the delay allegedly caused by State Farm Auto's failure to authorize open-parts sourcing to violation of an identifiable industry standard. *See Turner*, 2015 WL 1297844, at *6 (excluding expert's opinion where the expert opined that "State Farm delayed and denied payment in violation of Insurance Industry Standards," but "[n]othing further in the record . . . describes or identifies Insurance Industry Standards or specifies what standard(s) governs timeliness in claim payment") (applying Colorado law) (internal quotations omitted). Mr. Castillo also cites Colo. Rev. Stat. 10-4-120(3)(e), pursuant to which Mr. Castillo opines that "State Farm has a duty to pay all reasonable costs sufficient to pay for the beneficiary's or claimant's repairs including materials or parts." *See* Docket No. 61-2 at 6. However, Mr. Castillo

never opines that State Farm Auto failed to pay all reasonable costs associated with the replacement parts, only that State Farm Auto did so with "excessive delays." *See id.* at 4. Accordingly, the Court will exclude Mr. Castillo's opinions regarding State Farm Auto's handling of discontinued parts.

## IV. CONCLUSION

Therefore, it is

**ORDERED** that Defendant State Farm Automobile Insurance Company's Motion to Exclude or Limit Opinions of Plaintiff's Expert Aaron Castillo [Docket No. 61] is **GRANTED in part and DENIED in part**.

DATED September 14, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge