IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 23-cv-02243-PAB-STV

MICHELE A. OVER, and
THE ESTATE OF PAUL R. OVER,[1]

Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and
STATE FARM FIRE AND CASUALTY COMPANY,

Defendants.

---

**ORDER**

---

This matter comes before the Court on Defendants' Joint Partial Motion for Summary Judgment on Extracontractual Claims [Docket No. 59]. Plaintiffs filed a response. Docket No. 66. Defendants filed a reply. Docket No. 70. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. UNDISPUTED FACTS[2]

### A. Paul Over's Automobile Insurance Claims

Paul Over was the owner of a 2003 GMC Sierra 2500 ("the truck"). Docket No. 59 at 2, ¶ 1. Mr. Over was a named insured on an insurance policy covering the truck through State Farm Mutual Automobile Insurance Company ("State Farm Auto"). *Id.*,

[1] The Estate of Paul Over was substituted as a plaintiff for Paul Over after Mr. Over passed away. *See* Docket Nos. 48, 69. The amended complaint makes no changes to plaintiffs' bad faith claims.

[2] The following facts are undisputed unless otherwise noted.

¶ 2. On August 22, 2022, the truck was damaged from an apparent break-in attempt while it was in Mr. Over's driveway. *Id.* at 3, ¶ 3. Mr. Over filed a claim for this damage that same day (the "August 22 Claim"). *Id.*, ¶ 4. Mr. Over chose to have his truck repaired at Weld County Garage ("WCG"). *Id.*, ¶ 5. On August 24, 2022, the truck was stolen from WCG. *Id.*, ¶ 6. On August 25, 2022, the truck was recovered. *Id.*, ¶ 8. That same day, State Farm Auto prepared a damage estimate for the August 22 Claim, but no payment was made because the amount was less than Mr. Over's deductible. *Id.*, ¶ 9. On August 25, 2022, State Farm Auto learned of the theft. *Id.*, ¶ 10. At that time, Mr. Over informed State Farm Auto that WCG's insurance, rather than State Farm Auto, would be handling the damage caused by the theft. *Id.*, ¶ 11.

On August 26, 2022, State Farm Auto was informed that WCG's estimate for the August 22 Claim was higher than State Farm Auto's estimate. *Id.* at 3-4, ¶ 12. On September 7, 2022, State Farm Auto advised Mr. Over that it had not received a supplement that included WCG's estimate for the August 22 Claim. *Id.* at 4, ¶ 13. On September 15, 2022, Mr. Over submitted a document entitled, "Break in and resulting theft of GMC Sierra 2500HD.pdf." Docket No. 66 at 5, ¶ 52. In the document, Mr. Over identified the stolen items from his truck, including the tonneau cover. *Id.* at 6, ¶ 53.

On September 14, 2022, October 3, 2022, and October 11, 2022, State Farm Auto attempted to call WCG to follow up on the estimate. Docket No. 59 at 4, ¶ 14. Each time, WCG's service manager, Mr. McClain, did not answer so State Farm Auto left a voicemail. *Id.* On October 11, 2022, State Farm Auto and Mr. Over attempted to call Mr. McClain three times, did not receive an answer, and left another voicemail. *Id.*, ¶ 15.

On October 14, 2022, WCG generated the supplemental estimate. *Id.*, ¶ 16. On October 18, 2022, State Farm Auto received WCG's supplemental estimate. *Id.*, ¶ 17. On October 26, 2022, State Farm Auto paid $542.31 on the October 18, 2022 supplement for the August 22 Claim. *Id.* at 5, ¶ 20.

On October 25, 2022, WCG's insurance carrier informed State Farm Auto that it would not be covering the damage from the August 24, 2022 theft. *Id.* at 4, ¶ 18. On October 31, 2022, State Farm Auto opened the second auto claim ("the Theft Claim"). *Id.*, ¶ 19. On November 9, 2022, State Farm Auto attempted to contact WCG to discuss an estimate, but could not reach Mr. McClain. *Id.* at 5, ¶ 21. State Farm Auto requested that someone from WCG place a note on Mr. McClain's door to call State Farm Auto regarding Mr. Over's claim. *Id.* Mr. McClain returned State Farm Auto's call later that day and indicated that he would send an estimate for the Theft Claim by November 10, 2022. *Id.* Mr. McClain did not provide the estimate on November 10, 2022 and did not answer State Farm Auto's calls on November 10. *Id.*, ¶ 22.

On November 18, 2022, WCG emailed State Farm Auto an estimate for the Theft Claim totaling $3,916.50.[3] *Id.*, ¶ 23; Docket No. 66 at 3, ¶ 23; Docket No. 70 at 1, ¶ 23. On November 21, 2022, Mr. Over sent WCG's estimate to State Farm Auto's Business-to-Business ("B2B") Portal. Docket No. 59 at 5, ¶ 24. He also requested an in-person inspection. *Id.* On November 28, 2022, State Farm Auto performed an in-person inspection and generated an estimate totaling $2,070.81 that same day. *Id.*,

[3] Defendants assert that WCG emailed Mr. Over, and not State Farm Auto, the November 18, 2022 estimate. Docket No. 59 at 5, ¶ 23. Plaintiffs dispute this, arguing that State Farm Auto did receive the estimate. Docket No. 66 at 3, ¶ 23. In reply, defendants concede that State Farm Auto did receive the estimate on November 18, 2022. Docket No. 70 at 1, ¶ 23. Accordingly, the Court deems this fact as admitted.

¶ 25. On November 30, 2022, Mr. Over emailed State Farm Auto an estimate from WCG totaling $7,589.89. *Id.* at 6, ¶ 27; Docket No. 66 at 3, ¶ 27; Docket No. 70 at 1, ¶ 27.[4] That same day, Mr. Over called State Farm Auto to find out why State Farm Auto's estimate was so different from WCG's estimate of "over $5,000." Docket No. 59 at 6, ¶ 26.

On December 8, 2022, Mr. Over emailed the $7,589.89 estimate to State Farm Auto. *Id.* ¶ 28. That same day, State Farm Auto discussed the estimate differences with Mr. Over, including his concern that State Farm Auto did not consider the tonneau for the Theft Claim. *Id.*, ¶ 29. State Farm Auto requested a receipt for the tonneau cover as State Farm Auto did not possess a part number or a price to value the cover. *Id.*, ¶ 30. Mr. Over stated that he did not have a receipt. *Id.*, ¶ 31. State Farm Auto therefore used WCG's November 30, 2022 supplemental estimate that included the necessary part information to estimate the value of the tonneau cover. *Id.*, ¶ 32. On December 16, 2022, State Farm Auto issued a supplemental estimate of $5,109.62 that included the tonneau cover. *Id.*, ¶ 33.

Due to the discontinuation of several parts needed for repair, State Farm Auto indicated to WCG where it could find the parts. *Id.*, ¶ 34.[5] State Farm Auto did not

---

[4] Defendants assert that State Farm Auto had not received a WCG estimate that exceeded $5,000 as of November 30, 2022. Docket No. 59 at 6, ¶ 27. Plaintiffs dispute this, arguing that Mr. Over emailed State Farm Auto a WCG estimate for $7,589.89 on November 30, 2022. Docket No. 66 at 3, ¶ 27. In reply, defendants concede that State Farm Auto did receive this estimate on November 30, 2022. Docket No. 70 at 1, ¶ 27. Accordingly, the Court deems this fact as admitted.

[5] Plaintiffs dispute this assertion, citing the expert reports of insurance industry standards expert Aaron Castillo. *See* Docket No. 66 at 4, ¶ 34 (citing Docket Nos. 59-23, 59-24). For the reasons stated in the Court's order on State Farm Auto's motion to exclude Mr. Castillo's opinions, the Court finds that Mr. Castillo's opinions regarding State Farm Auto's handling of the discontinued parts are not admissible under Fed. R.

instruct WCG that it needed to source parts from any particular vendor. *Id.*, ¶ 35.[6] On December 18, 2022, State Farm Auto made its final payment of $4,609.62, which is the value of State Farm Auto's December 16, 2022 estimate minus Mr. Over's deductible. *Id.* at 7, ¶ 36.

In April 2023, with WCG unable to get parts from the vendor LKQ, Mr. Over retrieved the truck from WCG. Docket No. 66 at 6, ¶ 54. Mr. Over and his son purchased parts from Amazon and repaired the vehicle themselves. *Id.*, ¶ 55.

**B. <u>Plaintiffs' Claim for Hail Damage</u>**

During the relevant time period, plaintiffs had a policy with State Farm Fire and Casualty Company ("State Farm Fire") for their residence on North 3rd Street in Johnstown, Colorado (the "property"). Docket No. 59 at 7, ¶ 37. The plaintiffs hired Lion Home Service to blow insulation into the attic above the garage on the property. *Id.*, ¶ 38. In the process of blowing in the insulation, Lion Home Service, or an employee of the associated Lion Home Roofing and Gutters, went onto the property's roof and did an inspection which allegedly revealed hail damage caused by a hailstorm on June 25, 2021. *Id.*, ¶ 39.

On November 11, 2022, plaintiffs filed a hail claim with State Farm Fire. *Id.*, ¶ 40. On November 16, 2022, State Farm Fire inspected the property. *Id.*, ¶ 41. The inspection releveled "minor hail damage to the roof vents, gutters, some downspouts,

---

Evid. 702. *See* Docket No. 78 at 15-17. Accordingly, the Court deems this fact as admitted.

[6] Plaintiffs dispute this assertion, citing the expert report of Mr. Castillo. *See* Docket No. 66 at 4, ¶ 35 (citing Docket No. 59-23). For the reasons stated *supra* n.5, Mr. Castillo's opinions are not admissible under Fed. R. Evid. 702. Accordingly, the Court deems this fact as admitted.

overhead doors, and vinyl glazing bead" but there was no accidental direct physical loss to the shingles. *Id.* Rather, any damage to the shingles had been caused by age or wear and tear, rather than hail. *Id.* State Farm Fire prepared an estimate of $4,070.75 (with $483.65 due after depreciation and the deductible) for the replacement cost value, which payment State Farm Fire sent by check on November 16, 2022. *Id.* at 7-8, ¶ 42.

On November 18, 2022, Lion Home Roofing and Gutters sent State Farm Fire an estimate with a total repair cost of $30,021.59. *Id.* at 8, ¶ 43. That same day, Ricardo Ortiz from Lion Home Roofing and Gutters asked State Farm Fire for additional information regarding its determination that the shingle damage was not from hail, given that the steel gutters and steel garage door were identified as having hail damage. Docket No. 66 at 6, ¶ 56.

On January 3, 2023, Mr. Ortiz sent State Farm Fire a property inspection from 2017. *Id.*, ¶ 57. State Farm Fire said it would not take into consideration property inspection forms from 2017. *Id.*, ¶ 57. On January 24, 2023, Mr. Ortiz called State Farm Fire and requested a second inspection of the roof. Docket No. 59 at 8, ¶ 44. Mr. Ortiz pointed to the 2017 inspection that he felt showed no "blistering." *Id.* State Farm Fire called Ms. Over to report the conversation with Mr. Ortiz. *Id.*, ¶ 45. Ms. Over indicated that she would seek counsel. *Id.*

On July 9, 2023, plaintiffs had Justin Jacobson, a public adjuster, inspect the property. *Id.*, ¶ 46. On August 3, 2023, plaintiffs filed suit against defendants. *Id.*, ¶ 47. On April 4, 2024, Mr. Jacobson's report was provided to State Farm Fire. *Id.*, ¶ 48. A one-page letter from Mr. Ortiz was also provided on April 4, 2024. *Id.*, ¶ 49.

State Farm Fire retained an expert, Matt Perkins, to inspect the property again. *Id.* at 9, ¶ 50. Based on his April 16, 2024 inspection, Mr. Perkins opined that "the asphalt-composition single roofing systems atop the residence at the subject property were not damaged by hail. Rather, the shingles exhibit granule loss related to natural, age-related deuteriation, low shingle quality, and/or problems with roof ventilation." *Id.*, ¶ 51.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). A movant who bears the burden at trial must submit evidence to establish the essential elements of its claim. *Harper v. Mancos Sch. Dist. RE-6*, 837 F. Supp. 2d 1211, 1217 (D. Colo. 2011).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."

*Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

Plaintiffs assert claims for breach of contract arising out of plaintiffs' claim for hail damage against State Farm Fire (Count I); a statutory bad faith claim for unreasonable denial of plaintiffs' claim for hail damage against State Farm Fire (Count II); a common law bad faith breach of insurance contract claim arising out of plaintiffs' claim for hail damage against State Farm Fire (Count III); a statutory bad faith claim for unreasonable delay and denial of Mr. Over's auto claims against State Farm Auto (Count IV); and a common law bad faith breach of insurance contract claim arising out of Mr. Over's auto claims against State Farm Auto (Count V). Docket No. 69 at 5-9. Defendants move for summary judgment on plaintiffs' bad faith claims.

**A. <u>Statutory Bad Faith Claims</u>**

As an initial matter, both parties stray from the undisputed facts by citing evidence in the argument sections of their briefs that was not included in their assertions of fact. *See, e.g.*, Docket No. 59 at 10-20; Docket No. 66 at 9-20; Docket No. 70 at 2-8. This violates the Court's Practice Standards, *see* Practice Standards (Civil Cases), Judge Philip A. Brimmer, § III.F.3, and is in contravention of Fed. R. Civ. P. 56. Rule 56(e) refers to adjudication based upon "assertions of fact." *See* Fed. R. Civ. P. 56(e). Rule 56 also distinguishes such assertions or statements of fact from the evidence that supports the assertions. *See, e.g.*, Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record"); *see also* Practice Standards (Civil Cases), Judge Philip A. Brimmer, § III.F.3.b.i-v (requiring that summary judgment briefing include a statement of fact section setting forth "in simple, declarative sentences, separately numbered and paragraphed, each material fact" which is to "be accompanied by a specific reference to material in the record which establishes that fact"). Because citations to facts outside the parties' statements of facts violate the Court's Practice Standards, the Court will not consider such evidence either to establish an undisputed fact or to raise a dispute of material fact.

Colo. Rev. Stat. § 10-3-1116(a) provides that policy holders who suffer an unreasonable delay or denial of benefits, as defined in Colo. Rev. Stat. § 10-3-1115, may bring an action for twice the covered benefits and attorneys' fees. *See* Colo. Rev. Stat. § 10-3-1116. Pursuant to § 10-3-1115, an insurer may not "unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant."

Colo. Rev. Stat. § 10-3-1115(1)(a). An insurer's conduct is unreasonable "if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." Colo. Rev. Stat. § 10-3-1115(2). The determination of whether an insurer has breached its duties to the insured is one of reasonableness under the circumstances. *Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App. 2008). In Colorado, acting "without a reasonable basis" has been construed to mean pursuing a groundless position that is not supported by credible evidence. *Cooper v. Shelter Gen. Ins. Co.*, 653 F. Supp. 3d 873, 878 (D. Colo. 2023) (quoting *Masters v. Safeco Ins. Co. of Am.*, No. 20-cv-00631-PAB-NRN, 2021 WL 4326269, at *5 (D. Colo. Sept. 23, 2021)). The reasonableness of an insurer's conduct must be determined objectively, based on proof of industry standards. *Schultz v. GEICO Cas. Co.,* 429 P.3d 844, 847 (Colo. 2018). Whether an insurer's conduct was reasonable under the circumstances is ordinarily a question of fact for the jury. *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 497 (Colo. App. 2011). However, in appropriate circumstances, as when there are no genuine disputes of material facts, reasonableness may be decided as a matter of law. *Estate of Morris*, 192 P.3d at 524.

***1. Count IV – Automobile Insurance Claims***

Defendants argue that the delay in processing Mr. Over's claim is not attributable to State Farm Auto, but rather to WCG, *see* Docket No. 59 at 10-14, and that State Farm Auto acted in a reasonable manner considering WCG's failure to respond to State Farm Auto's messages and failure to provide the requested documentation. *See id.* Defendants insist that there is no evidence that State Farm Auto required WCG to use a specific vendor to source discontinued parts. *See id.* at 15-16. Defendants also argue

that State Farm Auto timely processed and paid Mr. Over's claim for the tonneau cover. *See id.* at 16-17.

Plaintiffs respond that the delay in processing Mr. Over's claims is attributable to State Farm Auto. *See* Docket No. 66 at 9-12. Specifically, plaintiffs argue that State Farm Auto unreasonably delayed resolution of Mr. Over's claim by failing to physically inspect the truck and by forcing WCG to upload estimates using State Farm Auto's software. *See id.* at 10-11. Plaintiffs also argue that State Farm Auto unreasonably delayed the claim by forcing WCG to obtain replacement parts from a particular vendor and by failing to account for the tonneau cover in its estimate. *See id.* at 12-14.

**a. The August 22 Claim**

The Court begins by analyzing State Farm Auto's handling of the August 22 Claim for the attempted break-in. Mr. Over filed his claim on August 22, 2022. Docket No. 59 at 3, ¶ 4. Three days later, State Farm Auto prepared a damage estimate. *Id.*, ¶ 9. On August 26, 2022, State Farm Auto learned that WCG's estimate regarding the August 22 Claim was higher than State Farm Auto's estimate and advised WCG to send a supplemental estimate through the B2B Portal, which State Farm Auto uses for its online claims program. *Id.* at 3-4, ¶ 12. Twelve days later, State Farm Auto followed up with Mr. Over, informing him that WCG had not sent the supplement. *Id.* at 4, ¶ 13. State Farm Auto attempted to call WCG on three separate dates to get the supplement. *Id.*, ¶ 14. Each time, WCG did not answer and State Farm Auto left a voicemail. *Id*. On one of these days, October 11, 2022, State Farm Auto and Mr. Over called WCG three times with no answer. *Id.*, ¶ 15. State Farm Auto received the supplement from WCG

on October 18, 2022. *Id.*, ¶ 17. Eight days after receiving the supplement, State Farm paid $542.31 to Mr. Over on his August 22 Claim. *Id.* at 5, ¶ 20.

No reasonable jury could conclude that State Farm Auto unreasonably delayed payment of the August 22 Claim. The undisputed facts show that State Farm Auto acted promptly upon learning that WCG's estimate for the damages had come in higher and sought a supplement from WCG that included WCG's estimate for the August 22 Claim. State Farm Auto followed up several times with WCG to get that supplement and WCG was non-responsive. No reasonable jury could attribute this delay to any dilatory conduct by State Farm Auto where State Farm called WCG several times to get the estimate and WCG failed to answer. Eight days after State Farm received the supplemental estimate from WCG, it issued payment on the August 22 Claim.

Plaintiffs attempt to raise a genuine dispute of material fact by arguing that State Farm Auto did not physically inspect the vehicle between August and October 2022 and "forced WCG to communicate" via State Farm Auto's software. *See* Docket No. 66 at 10. As discussed in the Court's order on State Farm Auto's Rule 702 motion, the Court has excluded Mr. Castillo's opinion that State Farm Auto should have performed a physical inspection. *See* Docket No. 78 at 11-12. Moreover, the Court finds that no reasonable jury could conclude that it was unreasonable for State Farm Auto to decline to perform a physical inspection between August and October 2022. During this time, State Farm Auto was attempting to procure the supplemental estimate from WCG. Plaintiffs cite no industry standard that made it unreasonable for State Farm Auto to attempt to obtain the supplemental estimate through electronic means first. Furthermore, Mr. Over did not request a physical inspection until November 21, 2022.

*See* Docket No. 59 at 5, ¶ 24. Regarding plaintiffs' argument that it was unreasonable for State Farm Auto to communicate through the B2B Portal, plaintiffs have cited no facts suggesting that State Farm Auto forced WCG to communicate through any particular means. It is undisputed WCG was ultimately able to send the supplemental estimate to State Farm Auto. *See id.* at 4, ¶ 17. Furthermore, plaintiffs have cited no facts suggesting that WCG's failure to return State Farm Auto's numerous calls between August 26, 2022 and October 14, 2022 was due to WCG's inability to use State Farm Auto's B2B Portal.

Accordingly, the Court finds that no reasonable jury could conclude that State Farm Auto unreasonably delayed in its handling of the August 22 Claim.

**b. The Theft Claim**

Turning to the Theft Claim, State Farm Auto learned of the theft of the truck on August 25, 2022. *Id.* at 3, ¶ 10. At that time, Mr. Over told State Farm Auto that WCG's insurer would be handling the claim for damage caused by the theft. *Id.,* ¶ 11. It was not until October 25, 2022 that WCG's insurance carrier told State Farm that it would not be covering the damages from the theft. *Id.* at 4, ¶ 18. Six days later, State Farm Auto opened the Theft Claim. *Id.*, ¶ 19. Nine days later, State Farm Auto attempted to contact WCG to discuss an estimate for the Theft Claim, but Mr. McClain did not answer. *Id.* at 5, ¶ 21. State Farm Auto requested that someone put a note on Mr. McClain's door for him to call. *Id.* Mr. McClain returned the call and, although he told State Farm Auto he would provide the estimate by November 10, 2022, he failed to do so. *Id.*, ¶¶ 21-22. State Farm Auto called Mr. McClain again on November 10, 2022 and he did not answer. *Id.*, ¶ 22. On November 18, 2022, WCG provided the estimate

in the amount of $3,916.50 to State Farm Auto. *Id.*, ¶ 23; Docket No. 66 at 3, ¶ 23; Docket No. 70 at 1, ¶ 23. On November 21, 2022, Mr. Over also submitted WCG's estimate through the B2B Portal and requested a physical inspection. Docket No. 59 at 5, ¶ 24. State Farm Auto performed the inspection one week later and provided its estimate of $2,070.81. *Id.*, ¶ 25. On November 30, 2022, Mr. Over provided State Farm Auto a new estimate from WCG in the amount of $7,589.89. *Id.* at 6, ¶ 27; Docket No. 66 at 3, ¶ 27; Docket No. 70 at 1, ¶ 27. On December 8, 2022, State Farm Auto discussed the difference between its estimate and WCG's estimate with Mr. Over. Docket No. 59 at 6, ¶ 29. In this discussion, Mr. Over raised a concern that State Farm Auto had not accounted for the tonneau cover in its estimate. *Id.* State Farm Auto requested a receipt, and when Mr. Over informed State Farm Auto that he did not have a receipt, State Farm Auto relied on WCG's November 30, 2022 supplemental estimate. *Id.*, ¶¶ 30-32. On December 16, 2022, State Farm Auto issued a supplemental estimate of $5,109.62 that included the tonneau cover. *Id.*, ¶ 33. On December 18, 2022, State Farm Auto made its final payment of $4,609.62. *Id.* at 7, ¶ 36.

No reasonable jury could conclude that State Farm Auto unreasonably delayed in issuing payment in connection to the Theft Claim. State Farm Auto had no reason to believe that it would have to open this claim until October 25, 2022, when it learned that WCG's insurer would not be covering the claim. Shortly thereafter, State Farm Auto reached out to WCG to get an estimate. Mr. McClain failed to answer State Farm Auto's calls and provide the estimate by the promised date. While the WCG estimate was received by State Farm Auto on November 18, 2022, no reasonable jury could find State Farm Auto delayed in issuing its estimate because, three days later, Mr. Over

requested a physical inspection. State Farm Auto performed the inspection one week later and provided its estimate. Thus, the Court also rejects plaintiffs' argument that they have raised a genuine dispute that State Farm Auto unreasonably delayed in performing the inspection.

Plaintiffs also contend that the physical inspection itself was "deficient" because State Farm Auto failed to confer with WCG during the inspection. Docket No. 66 at 11. As discussed above, plaintiffs improperly assert facts that were not asserted in plaintiffs' response to defendants' statement of facts or plaintiffs' statement of undisputed material facts. Moreover, plaintiffs' facts are based on opinions from Mr. Castillo's report that the Court has excluded. *See* Docket No. 78 at 11-12. Even if plaintiffs relied on properly asserted facts, the Court would nonetheless find that plaintiffs fail to raise a dispute regarding the deficiency of State Farm Auto's physical inspection. Plaintiffs claim that the inspection was deficient without identifying what additional facts State Farm Auto would have uncovered in conferring with WCG. *See Vansky v. State Farm Auto. Ins. Co.*, No. 20-cv-01062-PAB-NRN, 2022 WL 900160, at *7 (D. Colo. Mar. 28, 2022) (finding that, "although plaintiff argues that defendant's investigation of his claim was inadequate, plaintiff has not identified what further investigation could or would have uncovered" and "Plaintiff therefore has not shown a genuine dispute of material fact that defendant unreasonably delayed or denied his UIM claim").

State Farm Auto's handling of Mr. Over's claim for the tonneau cover also does not provide a basis for a jury to conclude that State Farm Auto unreasonably delayed in processing the Theft Claim. Again, plaintiffs rely on improperly asserted facts. *See* Docket No. 66 at 13-14. Moreover, plaintiffs' facts fail to demonstrate State Farm Auto's

unreasonableness. Plaintiffs rely on the fact that Mr. Over provided notice of the missing tonneau cover on September 15, 2022. *See id.* However, as discussed above, State Farm Auto had no reason to act on any claim relating to the August 24, 2022 theft until October 25, 2022, when WCG's insurer informed State Farm Auto it would not cover the damage. Even accepting as true plaintiffs' assertion that State Farm Auto knew or should have known the tonneau cover was part of the Theft Claim, plaintiffs fail to cite an industry standard that makes it unreasonable for State Farm Auto to ask for more information regarding the part number and value of the tonneau cover. And, contrary to plaintiffs' assertion that State Farm Auto "insisted that Mr. Over provide a receipt for the cover," *see id.* at 13, it is undisputed that, once Mr. Over informed State Farm Auto he did not have a receipt for the cover, State Farm Auto relied on WCG's November 30, 2022 supplemental estimate of the cover's value. *See* Docket No. 59 at 6, ¶ 32. State Farm Auto updated its estimate to include the cover by December 16, 2022. *Id.*, ¶ 33.

Finally, no reasonable jury could find that State Farm Auto's claims handling process regarding the discontinued parts was unreasonable. Plaintiffs rely on facts that are improperly asserted, *see* Docket No. 66 at 12-13, and which are based on opinions of Mr. Castillo that the Court has excluded. *See* Docket No. 78 at 15-17. Thus, it is undisputed that State Farm Auto did not require WCG to source the discontinued parts from a particular vendor. *See* Docket No. 59 at 6, ¶ 35. The Court has also excluded Mr. Castillo's opinions regarding the purported mismanagement of Mr. Over's claim that arose from State Farm Auto's assignment of claims between Tier 1 and Tier 2 adjustors. *See* Docket No. 78 at 14-15.

Accordingly, the Court finds that no reasonable jury could conclude that State Farm Auto unreasonably delayed in processing Mr. Over's Theft Claim. The Court will grant summary judgment for defendants on Count IV.

***2. Count II – Hail Damage Claim***

Defendants contend that plaintiffs' bad faith claims, related to State Farm Fire's handling of the hail damage claim, is merely a causation and value dispute. *See* Docket No. 59 at 19-21. Defendants state that State Farm Fire had a reasonable basis for its position that hail did not cause the damage to the property's shingles. *See id.* at 19. Defendants also note that plaintiffs rely on documents produced post-litigation, and that State Farm Fire had a "reasonable basis for its position pre suit." *Id.*

Plaintiffs respond that this is "not a mere valuation dispute" and instead this case concerns State Farm Fire's denial of "coverage to repair shingle damage to the Plaintiffs['] roof resulting from hail damage." Docket No. 66 at 14. Plaintiffs contend that they have adduced evidence that State Farm Fire "never even prepared an estimate to repair the shingle damage." *Id*. at 15. Plaintiffs also argue that the "post-litigation evidence also demonstrates that the claim was unreasonably denied." *Id.* at 16.

Again, the Court will not consider facts that the parties improperly asserted in violation of the Court's Practice Standards. *See* Docket No. 59 at 19-20; Docket No. 66 at 16-18. Furthermore, the parties' post-litigation evidence – namely, expert reports produced after litigation commenced – while relevant to plaintiffs' breach of contract claim, it is irrelevant to plaintiffs' statutory bad faith claim, which is based on pre-litigation conduct. Defendants rely on the report of Mr. Perkins, who opined that the

shingle damage was not caused by hail. *See* Docket No. 59 at 19-20. Plaintiffs rely on Mr. Jacobson's report where he opined that plaintiffs' shingles showed signs of hail damage. *See* Docket No. 66 at 16-17. However, "[a]n insurer's decision to deny benefits to its insured must be evaluated based on the information before the insurer at the time of that decision." *Schultz*, 429 P.3d at 848 (citation omitted). Because both experts' reports were created after State Farm Fire denied plaintiffs' claim for hail damage, any information the experts provided could not have played a role in State Farm Fire's decision to deny the claim.

Even if the Court were to consider plaintiffs' improperly asserted facts regarding the deposition testimony of State Farm Fire's representative and whether State Farm Fire properly identified the composition of the damaged gutters, the Court finds that no reasonable jury could conclude that State Farm Fire acted without a reasonable basis in denying plaintiffs' claim. It is undisputed that, on November 16, 2022, five days after plaintiffs filed their claim, State Farm Fire performed an inspection of the property. Docket No. 59 at 7, ¶¶ 40-41. The inspection found that the damage to the shingles had been caused by age or wear and tear, not hail. *Id.*, ¶ 41. Accordingly, State Farm Fire prepared an RCV estimate of $4,070.75. *Id.* at 7-8, ¶ 42. On November 18, 2022, Lion Home Roofing and Gutters sent State Farm Fire an estimate that exceeded State Farm Fire's estimate. *Id.* at 8, ¶ 43. Mr. Ortiz also called State Farm Auto that day, noting State Farm Fire's finding that the steel gutters and steel garage door had hail damage. Docket No. 66 at 6, ¶ 56. State Farm Fire declined Mr. Ortiz's request to conduct a second inspection of the roof. *See id.*, ¶ 59.

*El Dueno, LLC v. Mid-Century Ins. Co.*, 2025 WL 1540329 (10th Cir. May 30, 2025), involved a similar fact pattern. After plaintiff, the commercial building owner, submitted a claim for hail damage to defendant, defendant insurance company assigned a claim adjuster to investigate the damage to plaintiff's roof. *Id.* at *1. The claim adjuster performed an inspection and provided a damage estimate. *Id*. Plaintiff hired a contractor to repair its roof. *Id.* The contractor provided an estimate that exceeded the estimate provided by defendant's claim adjuster. *Id.* After plaintiff submitted the updated estimate to defendant, defendant had an engineering firm reinspect the roof. *Id.* The engineering firm concluded that hail did not damage the roof and the damage was preexisting or came from other causes. *Id.* Plaintiff brought a claim for statutory bad faith breach of contract pursuant to Colo. Rev. Stat. § 10-3-1115. *Id.*

*El Dueno* rejected plaintiff's argument that "the conflicting information before Defendant and the methodological flaws in [the engineering firm's] report demonstrate Defendant acted unreasonably in denying it coverage" and that "the conflicting reports and [the engineering firm's] errors demonstrate a genuine dispute of material fact." *See id.* at *3. In concluding that plaintiff "failed to show Defendant lacked a reasonable basis to deny coverage," *El Dueno* held that "the most glaring issue with Plaintiff's argument concerns the relevant industry standard." *Id.* While plaintiff argued that "Defendant was unreasonable for relying on [the engineering firm's] report and investigation conducted when small patches of snow and ice dotted the roof," *El Dueno* held that this was insufficient to defeat summary judgment because "[t]his is not an articulated industry

standard . . . and without one with which to compare Defendant's conduct, we cannot conclude Defendant acted unreasonably in denying coverage." *Id.*

As noted by *El Dueno*, "expert witnesses often help establish industry standards, but they are not required when the reasonable investigation and denial of an insured's claim is within the common knowledge and experience of ordinary people." *Id.*(internal quotation and citation omitted). Here, plaintiffs have not articulated industry standards that raise a genuine dispute regarding their statutory bad faith claim. Plaintiffs have neither provided an industry standards expert to opine on the applicable standards when handling hail damage claims nor offered any argument that such standards are within the knowledge and experience of ordinary people.

Plaintiffs state that it was unreasonable for State Farm Fire to reject Mr. Ortiz's argument – that the shingles must have been damaged by the hail because State Farm Fire found damage to other items such as the steel gutters – in favor of its own inspection which found no hail damage to the shingles. *See* Docket No. 66 at 15-18. However, this argument does not constitute "an articulated industry standard." *See El Dueno*, 2025 WL 1540329, at *3. Plaintiffs provide no industry standard that would make it unreasonable for State Farm Fire to rely on the results of its own inspection, as opposed to a mere roof repair estimate (rather than an inspection report). *See Marra v. Owners Ins. Co.*, No. 24-cv-01547-NYW-MDB, 2026 WL 503305, at *4 (D. Colo. Feb. 24, 2026) (finding that plaintiff failed to show that defendant's reliance on a report was unreasonable because "Plaintiff does not articulate any relevant insurance industry standard that [defendant] violated by relying on the . . . report or through the actions it took in response to receiving . . . conflicting opinions").

Plaintiffs also argue that State Farm Fire's handling of the hail claim was unreasonable given State Farm Fire's refusal to consider the 2017 inspection forms, which, according to Mr. Ortiz, showed no signs of shingle blistering. *See* Docket No. 66 at 15-16. Plaintiffs do not identify an industry standard that makes it unreasonable for an insurer to decline to rely on roof inspections that took place five years earlier to suggest that a lack of blistering then suggests hail damage, rather than blistering, now. While plaintiffs argue that it was unreasonable for State Farm Fire to decline to conduct a second inspection, *see id.* at 16, plaintiffs fail to identify a widespread practice by homeowner insurers to do so. *See Windsor Ct., LLC v. Am. Fam. Mut. Ins. Co.*, No. 11-cv-01904-CMA-KLM, 2013 WL 799589, at *4 (D. Colo. Mar. 5, 2013) ("Plaintiff cites no Colorado authority, nor is the Court aware of any, holding that claims adjusters are obligated to return to an insured's property to reinspect it at the insured's request. To the contrary, Colorado law recognizes that an insurer must be accorded wide latitude in its ability to investigate claims and to resist false or unfounded efforts to obtain funds not available under the contract of insurance.") (footnote, internal quotation, and citation omitted). All that remains of plaintiffs' argument is that State Farm Fire and Mr. Ortiz disagreed on the extent of the hail damage that affected the property. While these issues may be germane to plaintiffs' breach of contract claim, this disagreement is not sufficient to support plaintiffs' bad faith claims. *See El Dueno,* 2025 WL 1540329, at *4 ("Mere disagreement is not enough for a claim under Colorado law, and because Plaintiff fails to articulate an industry standard, it has shown no more than mere disagreement.").

The fact that an insurer's coverage decision is "fairly debatable" is not alone dispositive of an insured's bad faith claim. *See Tafoya v. Allstate Vehicle & Prop. Ins. Co.*, 709 F. Supp. 3d 1353, 1365 (D. Colo. 2023) ("Colorado courts hold that fair debatability is not a threshold inquiry that is outcome determinative as a matter of law, nor is it both the beginning and the end of the analysis in a bad faith case.") (internal quotation and citation omitted). "While it is clear that an insurer may defend a fairly debatable claim, all that means is that it may not defend one that is not fairly debatable. But in defending a fairly debatable claim, an insurer must exercise reasonable care and good faith." *Sanderson v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1213, 1218 (Colo. App. 2010) (alteration and citation omitted). Whether a claim is "fairly debatable" is a "factor to be considered in a broader evaluation of whether an insurer acted reasonably." *Gribowski v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-03115-MEH, 2022 WL 16855688, at *8 (D. Colo. Nov. 10, 2022) (applying Colorado law) (citation omitted). The Court does not grant summary judgment for defendants merely because State Farm Fire's coverage decision was fairly debatable. Here, plaintiffs fail to raise a genuine dispute of material fact that State Farm Fire – in handling a hail claim where the cause of the shingles damage was fairly debatable – acted unreasonably under the circumstances. *See Estate of Morris*, 192 P.3d at 523. As discussed above, plaintiffs do not provide industry standards that show it was unreasonable for State Farm Auto to not perform a reinspection and to not consider the 2017 roof inspection report.

Because no reasonable jury could conclude that State Farm Fire acted without a reasonable basis in denying that part of plaintiffs' hail damage claim that involved shingle damage, the Court will grant summary judgment for defendants on Count II.

### B. <u>Counts III and V – Common Law Bad Faith Claims</u>

To prevail on a claim for bad faith delay or denial of insurance benefits under Colorado common law, a plaintiff must establish that his insurer (1) acted unreasonably under the circumstances; and (2) knew of, or had reckless disregard for, the unreasonableness of its actions. *Goodson v. Am. Standard Ins. Co. of Wisc.*, 89 P.3d 409, 415 (Colo. 2004). "The only element at issue in the statutory claim is whether an insurer denied benefits without a reasonable basis." *Cooper*, 653 F. Supp. 3d at 878 (alteration and citation omitted). "By contrast, to prove a first-party claim of common law bad faith, a plaintiff must show not only that the insurer's conduct in processing or denying a valid claim was unreasonable but also that the insurer knew its conduct was unreasonable or recklessly disregarded the unreasonableness of its conduct." *Id.* (citing *Travelers Insurance Co. v. Savio*, 706 P.2d 1258, 1275–76 (Colo. 1985)). "Accordingly, a claim of common law bad faith imposes a more exacting standard of proof than a statutory claim." *Id.* (citation omitted)); *Kisselman v. Am. Family Mut. Ins. Co.*, 292 P.3d 964, 975 (Colo. App. 2011) (the "burden of proving th[e] statutory claim is less onerous than that required to prove a claim under the common law for breach of the duty of good faith and fair dealing").

When analyzing Counts II and IV, plaintiffs' statutory bad faith claims, the Court determined that plaintiffs failed to show a genuine dispute of material fact as to whether defendants' conduct was unreasonable. Thus, plaintiffs have not satisfied the first element of a common law bad faith claim, and the Court will dismiss Counts III and V as a result. *See Garcia v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-01504-CMA-MEH, 2021 WL 5770229, at *3 (D. Colo. Dec. 6, 2021) (dismissing common-law bad faith

claim where plaintiff failed to identify a genuine dispute of material fact regarding defendant's reasonableness); *Stemple v. State Farm Mut. Auto. Ins. Co.*, No. 17-cv-02381-CMA-STV, 2019 WL 2866587, at *5 n.5 (D. Colo. July 3, 2019) ("Plaintiff cannot establish the first element of her bad faith claim, rendering it unnecessary for the Court to analyze the second element of the claim.").

## IV. CONCLUSION

Therefore, it is

**ORDERED** that Defendants' Joint Partial Motion for Summary Judgment on Extracontractual Claims [Docket No. 59] is **GRANTED**. It is further

**ORDERED** that Counts II, III, IV, and V are **DISMISSED with prejudice**. DATED September 14, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge